UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GHADA A.,

           Plaintiff,

      v.                                                     **DECISION AND ORDER**
                                                                22-CV-6018S
COMMISSIONER OF SOCIAL SECURITY,

           Defendant.
_____

      1.      Plaintiff Ghada A.[1] challenges the determination of an Administrative Law Judge ("ALJ") that she is not disabled within the meaning of the Social Security Act ("the Act").  Plaintiff alleges that she has been disabled since January 1, 2012, due to physical and mental impairments.  Plaintiff maintains that she is entitled to benefits because her impairments render her unable to work.

      2.      Plaintiff filed an application for supplemental security income on December 16, 2014.  After denial at the agency level, Plaintiff proceeded to a hearing before ALJ Maria Herrero-Jaarsma on August 23, 2017.  ALJ Herrero-Jaarsma denied Plaintiff's application for benefits, and the Appeals Council denied review.  Upon appeal to federal court, the parties stipulated to remand, and the case was returned to the Commissioner for further proceedings.

      3.      On remand, the case was assigned to ALJ Bryce Baird, who conducted telephonic hearings on June 24 and July 1, 2021.  At the time of the hearing, Plaintiff was

---

[1] In accordance with this district's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order identifies the plaintiff by first name and last initial only.

45 years old, with limited education, and no past relevant work.  The ALJ considered the case *de novo* and, on September 15, 2021, issued a written decision denying Plaintiff's application for benefits.  The Appeals Council thereafter denied Plaintiff's request for review.

4.      Plaintiff filed the current action on January 12, 2022, challenging the Commissioner's final decision.[2]  After initial filing of the administrative record,[3] the parties cross-moved for judgment on the pleadings under Rule 12 (c) of the Federal Rules of Civil Procedure, with briefing concluded on January 19, 2023.  (Docket Nos. 10, 13, 16.)  The case was thereafter reassigned here on April 3, 2023, at which time this Court took the motions under advisement without oral argument.  (Docket No. 21.)  For the following reasons, Plaintiff's motion will be denied, and Defendant's motion will be granted.

5.      A party is entitled to judgment on the pleadings under Rule 12 (c) "only if it has established that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law."  Juster Assocs. v. City of Rutland, 901 F.2d 266, 269 (2d Cir. 1990) (internal quotation marks omitted).  In social security appeals, the district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing a decision of the Commissioner of Social Security, with or without remanding the case for a rehearing."  42 U.S.C. § 1383 (c)(3).

6.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. § 1383 (c)(3); Wagner v. Sec'y of Health

---

[2] The ALJ's September 15, 2021 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

[3] The Commissioner subsequently filed a supplemental and later an amended administrative record to correct several errors in the transcript.  (Docket Nos. 16, 20.)

& Hum. Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Instead, the court's inquiry is limited to two issues: (1) whether the Commissioner applied the correct legal standards, and (2) whether the Commissioner's factual findings are supported by substantial evidence.  See Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see also Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence.").  In conducting this inquiry, the court cannot substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Hum. Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).  Consequently, if the Commissioner's determination is free from legal error and supported by substantial evidence, the court must affirm.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).

7.      As it relates to the legal-error inquiry, the court must determine whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotations and citations omitted).  "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (citation omitted).  This inquiry is completed first because "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made

according to the correct legal principles."  Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

8.      As it relates to the substantial-evidence inquiry, the standard is not high. See Biestek v. Berryhill, __ U.S. __, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019). The United States Supreme Court defines substantial evidence as only "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971), and has clarified that "[i]t means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154 (quoting Consol. Edison Co. v. NLRB, 305 U.S 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)).   Because the Commissioner's factual findings are conclusive if supported by substantial evidence, see 42 U.S.C. § 1383 (c)(3), review is properly focused on whether substantial evidence supports the Commissioner's determination, not whether substantial evidence might also support the plaintiff's position.    See Zacharopoulos v. Saul, 516 F. Supp. 3d 211, 220 (E.D.N.Y. 2021) (noting that "the relevant question is not whether substantial evidence supports plaintiff's position, but whether 'substantial evidence supports the ALJ's decision'") (quoting Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (emphasis in original)).   This is "a very deferential standard of review—even more so than the 'clearly erroneous' standard." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citing Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999)).

9.      "To determine on appeal whether [the Commissioner's] findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the

evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's factual findings must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). Similarly, where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982). In short, the substantial-evidence standard requires that once an ALJ finds facts, those facts can be rejected "'only if a reasonable factfinder would *have to conclude otherwise*.'" Brault, 683 F.3d at 448 (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original)).

10.    The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. § 416.920. The Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

11.    The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider her disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed"

> impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment, the
> fourth inquiry is whether, despite the claimant's severe
> impairment, she has the residual functional capacity to
> perform her past work.  Finally, if the claimant is unable to
> perform her past work, the [Commissioner] then determines
> whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

12.     The claimant has the burden of proof on the first four steps; the
Commissioner has the burden of proof on the fifth step.  See Bowen, 482 U.S. at 146 n.5;
Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The fifth step is divided into two
parts.   First, the Commissioner must assess the claimant's job qualifications by
considering his or her physical ability, age, education, and work experience.  Second, the
Commissioner must determine whether jobs exist in the national economy that a person
having the claimant's qualifications could perform.  See 42 U.S.C. § 1383 (c)(1)(A); 20
C.F.R. § 416.920 (a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954,
76 L. Ed. 2d 66 (1983).

13.     In this case, the ALJ found the following with regard to the five-step process
set forth above: (1) Plaintiff had not engaged in substantial gainful activity since
December 16, 2014, the application date (R. at 556); (2) Plaintiff's lumbar degenerative
disc disease, generalized anxiety disorder, major depressive disorder, and post-traumatic
stress disorder were severe impairments within the meaning of the Act (R. at 556-58); (3)
Plaintiff did not have an impairment or combination of impairments that met or medically
equaled any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R.
at 558-61); (4) Plaintiff retained the residual functional capacity ("RFC") to perform

sedentary work, with certain limitations[4] (R. at 561-69); (5) Plaintiff had no past relevant

work (R. at 569); and (6) Plaintiff could perform jobs that exist in significant number in the

national economy (R. at 569-70).  Accordingly, the ALJ determined that Plaintiff was not

under a disability as defined by the Act from December 16, 2014, through September 15,

2021.  (R. at 554, 570.)

14.    Plaintiff lodges two challenges to the ALJ's decision.  She first argues that

the ALJ erred at Step 3 by concluding that she did not have a mental impairment that met

or equaled one of the Listings.  Second, she argues that the ALJ erred at Step 5 by finding

that there existed a significant number of jobs in the national economy that she could

perform.  In response, the Commissioner argues that the ALJ's decision is supported by

substantial evidence and free from legal error and should therefore be affirmed.  This

Court agrees with the Commissioner.

15.    Plaintiff first argues that the ALJ erred by finding that she did not have a

mental impairment that met or equaled a listed impairment.  Mental impairments are

evaluated under 20 C.F.R. § 416.920a, which first requires that the ALJ determine

---

[4] The limitations consist of the following: "lifting and/or carrying up to 10 pounds occasionally and 5 pounds frequently, standing and/or walking for 2 hours per day in an eight-hour day, and sitting for 6 hours per day in an eight hour day[;] . . . never climb ladders, ropes, or scaffolds, but . . . could occasionally climb ramps and stairs[;] . . . occasionally stoop, kneel, and crouch, but . . . never balance nor crawl[;] . . .must use a handheld assistive device for walking over uneven terrain or for prolonged ambulation[;] . . . limited to work that does not require communication in English as a function of the job[;] . . . never endure extreme could, extreme heat nor excessive moisture or humidity[;] . . . could work in a moderate noise-level environment, as defined in *Selected Characteristics of Occupations*, an appendix to the Dictionary of Occupational Titles (DOT)[;] . . . should avoid exposure to excessive vibration and hazards such as unprotected heights and moving machinery[;] . . . perform simple, routine tasks, which can be learned after a short demonstration or within 30 days[;] . . .perform work that does not require more than simple work-related decisions[;] . . . could not perform a job that requires driving a motor vehicle[;] . . . could not be required to independently develop work strategies or identify workplace needs[;] . . . perform work that requires doing the same tasks every day with little variation in location, hours, or tasks[;] . . . perform work that is subject to no more than occasional supervision[;] . . .claimant could have no more than occasional interaction with the public and up to occasional interaction with coworkers and supervisors."  (R. at 561.)

whether a medically-determinable mental impairment exists.  20 C.F.R. § 416.920a (b)(1).

From there, the ALJ determines the degree of functional limitation resulting from any

existing impairment, i.e., the severity of the impairment.  20 C.F.R. § 416.920a (b)(2).

The degree of functional limitation is determined by assessing four broad functional

areas—(1) understanding, remembering, and applying information; (2) interacting with

others; (3) concentrating, persisting, and maintaining pace; and (4) adapting and

managing oneself—using a 5-point scale: none; mild, moderate, marked, and extreme.

20 C.F.R. § 416.920a (c)(2)-(3), (4).

16.     Mental disorders are found in Listing 12.  Among the findings necessary for

a mental impairment to meet Listing 12, it must result in extreme limitation of one, or

marked limitation of two, areas of mental functioning.  20 C.F.R. Part 404, Subpart P,

Appendix 1, § 12.00 (F)(2).  An extreme limitation under this Listing is one that results in

an individual being unable to function in the area independently, appropriately, effectively,

and on a sustained basis.  See Listing 12 (F)(2)(e).  A marked limitation is one that

seriously limits an individual's ability to function in the area independently, appropriately,

effectively, and on a sustained basis.  See Listing 12 (F)(2)(d).

17.     Here, the ALJ found no extreme or marked limitations in any area.  Instead,

he found mild limitations in understanding, remembering, or applying information;

moderate limitations in interacting with others; moderate limitations in concentrating,

persisting, or maintaining pace; and mild limitations in adapting and managing oneself.

(R. at 559-60.)  Plaintiff does not challenge the ALJ's mild-limitations findings, but she

argues that the ALJ erred by not finding marked limitations in the areas where he found

only moderate limitations.  Plaintiff maintains that the ALJ should have considered the

effects of her pain and physical impairments, along with her mental impairments, in determining whether she met any Listing.  Had the ALJ globally considered the combination of these impairments, argues Plaintiff, he should have found that she had marked limitations in the two categories at issue.

18.    Plaintiff's argument must be rejected for several reasons.  First, there is no requirement (and Plaintiff points to none) that an ALJ consider the mental effects of pain or physical impairments in assessing claimed stand-alone mental impairments at Step 3. Second, Plaintiff fails to identify the Listing she claims she would meet.  Third, Plaintiff fails to establish through record evidence that the mental effects of her pain or physical impairments resulted in any functional limitations in the four broad functional areas, let alone functional limitations that individually or in combination with other limitations are marked or extreme.  Finally, even assuming that Plaintiff has marked limitations in the two areas claimed, she would not necessarily meet the Listings considered by the ALJ— Listings 12.04, 12.06, 12.15—because they each require additional findings that Plaintiff fails to establish.  See  20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04, 12.06, 12.15. Consequently, Plaintiff's argument must be rejected.

19.    Plaintiff next challenges the ALJ's finding that a significant number of jobs exist in the national economy that she could perform.  Based on the vocational expert's testimony, the ALJ determined that with her age, education, work experience, and RFC, Plaintiff could perform the following jobs that exist in significant numbers in the national economy: ink printer (8,500 jobs); dial marker (3,750); lens inserter (11,000); and toy stuffer (9,000).  (R. at 570.)  The vocational expert's testimony, which the ALJ found credible, was based on information in *The Dictionary of Occupational Titles* and his own

education, 20 years' experience, and observation of various jobs being performed.  (R. at 570.)

20.     Plaintiff first argues that the ALJ's finding is not supported by substantial evidence because no evidence was elicited that any of the cited jobs are available to Plaintiff in the *local* economy.  This is a non-starter.  The statutory inquiry is whether substantial gainful work exists in the national economy, "regardless of whether such work exists in the immediate area in which [the claimant] lives, or whether a specific job vacancy exists for [the claimant], or whether [the claimant] would be hired if he applied for work."  42 U.S.C. § 1382c (a)(3)(B).  And under the governing regulations, it is enough that a significant number of jobs exist in the national economy, without a further finding concerning the local economy.  See 20 C.F.R. § 416.966 (a) (providing that work will be considered to exist in the national economy in sufficient numbers to support a finding of not disabled where "it exists in significant number *either* in the region where you live *or* in the several other regions of the country" (emphasis added)).  Since Plaintiff takes no issue with the ALJ's findings concerning the availability of jobs in the national economy, her first argument fails.

21.     Plaintiff next argues that the ALJ ignored the vocational expert's testimony that the jobs he cited could not be performed by an individual who required a walker while standing and ambulating or needed to change positions from sitting to standing every 20 minutes.  (R. at 606-07.)  But these were hypothetical questions asked of the vocational expert by Plaintiff's counsel.  Id.  The ALJ made neither finding.  Rather, the ALJ found that Plaintiff would require a handheld assistive device only for walking over uneven terrain or for prolonged ambulation and that she could stand for two hours and sit for six

hours in an 8-hour day.  (R. at 561.)  These limitations were considered by the vocational expert in concluding that significant numbers of job existed in the national economy that Plaintiff could perform.  (R. at 599-603.)  The ALJ therefore did not err by failing to consider the vocational expert's responses to hypotheticals that included assumptions inconsistent with the unchallenged RFC.

22.     Finally, Plaintiff argues that the ALJ erred by relying on the vocational expert's assessment that only half the number of cited jobs would exist for non-English speaking claimants.  (R. at 603-04.)  The vocational expert actually testified that the full number of jobs would be available even for someone limited in or unable to speak the English language, but that he would discount the number by half to account for "any issues where a person may not get hired because of that."  (R. at 604.)  According to Plaintiff, the vocational expert "simply guessed" that half the number of jobs would be unavailable and that "in reality . . . a much smaller percentage of these jobs" would be available.  (Memorandum of Law, Docket No. 13-1, p. 11.)  Plaintiff provides no basis for this purely speculative assertion.  She has presented no evidence to call into question the vocational expert's testimony, nor has she otherwise meaningfully developed this argument.  Consequently, this Court finds no error.

23.     Accordingly, having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds that it is free from legal error and supported by substantial evidence.  It is therefore affirmed.  See Grey, 721 F.2d at 46; Marcus, 615 F.2d at 27.  Plaintiff's motion for judgment on the pleadings is denied, and Defendant's motion seeking the same relief is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 13) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 17) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:          July 18, 2023
                Buffalo, New York

                                   s/William M. Skretny
                                  WILLIAM M. SKRETNY
                                United States District Judge